IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MARTHA BENOY,

       Plaintiff,

 v.                   OPINION and ORDER

BOARD OF REGENTS OF THE          17-cv-871-jdp
UNIVERSITY OF WISCONSIN SYSTEM,

       Defendant.

---

  Plaintiff Martha Benoy was a custodian for University Housing at the University of Wisconsin—Madison. She alleges that she was fired in retaliation for opposing sex discrimination, in violation of Title VII of the Civil Rights Act. Defendant Board of Regents of the University of Wisconsin System has filed a motion for summary judgment, Dkt. 21, which is now briefed and ready for decision.

  The court will grant the motion. The undisputed facts show that Benoy was fired because her supervisors believed that she was involved in stealing a chair from an apartment. No reasonable jury could find that this reason was pretextual or that her opposition to sex discrimination influenced the decision to fire her.

  Also before the court is Benoy's motion for leave to amend the complaint and add a claim for retaliation for opposing race discrimination in violation of 42 U.S.C. § 1981. Dkt. 16. The motion is untimely, but even if it weren't, the amendment is futile. It does not matter whether Benoy's protected activity is framed as opposition to sex discrimination or opposition to race discrimination. Either way, there is no causal link to her termination.

UNDISPUTED FACTS

The following facts are undisputed, except where noted.[1]

Benoy started working as a custodian for University Housing in 2008. And in 2011, she was assigned to work at University Apartments, a department within University Housing that provides apartments for graduate students and students with families.

Benoy is Latina. In May 2014, she filed a grievance with three other Latino custodians, Elida Senn, Ricardo Victor, and Noelia Hernandez. The grievance said that their supervisor, Mario Barcena, was unfairly scrutinizing Latinos and assigning them the "hardest" apartments. Dkt. 40, ¶ 12. In response, Kelly Ignatoski, the director of university housing, met with Barcena and the group. On June 17, Ignatoski wrote a memo that set new guidelines for how Barcena should interact with his staff in the future. Dkt. 24-1. But Ignatoski continued to receive the same type of complaints about Barcena, so she spoke to him again about how his behavior was being perceived by his employees.

Barcena did not think that he deserved to be disciplined for race discrimination. He voiced his "discomfort with this whole thing" to Ignatoski. Dkt. 30 (Barcena Dep. 39:13–16). He also told Benoy and the other employees about "everything that he was going to do to" the employees as revenge for the group grievance, Dkt. 28 (Benoy Dep. 47:15–48:16), but Benoy cannot remember any specific threats.

---

[1] Benoy did not respond to the majority of the university's proposed findings of facts, as required by the court's summary judgment procedures. *See* Dkt. 11, at 10–11. ("State clearly whether the fact is *disputed* or *undisputed*. If you dispute a proposed fact, state your version of the fact and cite to evidence that supports that version.") (emphasis in original). Where Benoy did not respond to a proposed finding of fact, the court deems that fact to be undisputed.

After the group complaint, Benoy and two other employees also told Ignatoski "multiple times" that Barcena was sexually harassing them. Dkt. 28 (Benoy dep. 56:9–19). (The parties do not say when or how often these discussions occurred.) Benoy cannot recall the details about what she told Ignatoski, except for one time when she complained that Barcena grabbed Hernandez's buttocks and told Benoy that she needed "a shot from a man." *Id.* at 56:23–58:16. Benoy and her coworkers also spoke to Gebriel Lefeber, the director of apartment facilities, about Barcena's sexual harassment.

Over the course of the next year, Barcena made reports about Benoy's work performance to Ignatoski and Lefeber.[2] He said that Benoy was generally a good worker, but that sometimes she had an attitude and would not do her work. Dkt. 30 (Barcena Dep. 47:12–48:12). It's not clear from the record how often Barcena criticized Benoy's work, except for Barcena's testimony that he talked to Ignatoski and Lefeber about Benoy "from time to time." *Id.* at 48:10–12.

On October 30, 2015, a resident in University Apartments notified Lefeber that two patio chairs had gone missing from his porch. He told Lefeber that he saw two Hispanic female custodians sitting in his chairs earlier in the day. In response, Ignatoski and Lefeber opened an investigation. Although the incident involved Barcena's employees, Ignatoski chose not to involve Barcena because of tensions between him and his subordinates.

After seeing photographs, the resident identified Benoy and Elvira Alvarez as the two custodians who sat in his chairs the day they were stolen. Three days later, one chair was found

---

[2] Benoy alleges that Barcena also initiated a discipline action against her in retaliation for her complaints. Dkt. 40, ¶ 30. But the cited evidence refers to a reprimand that Benoy received on March 18, 2014, prior to any of the complaints that she made about Barcena's conduct. *See* Dkt. 24-1, at 27–28 and Dkt. 41, ¶ 8.

in the back of a utility vehicle assigned to Alvarez. The other was found in a vacant apartment unit that Benoy was assigned to clean with her work partner, Noelia Hernandez. The apartment was about 540 square feet, and, except for the stolen chair, unfurnished.

Benoy was aware that University Housing had a zero-tolerance theft policy. The unauthorized removal of any property belonging to students, residents, or guests is considered theft. And if an employee is discovered stealing, he or she may be terminated, even if it is the first offense. Under the policy, it does not matter whether an employee took property off the worksite or simply took the property to another apartment.

A week after finding the chairs, Lefeber met with Benoy and told her that she was being investigated for possible theft. Benoy verified that she had been working in the apartment unit where the chair was found, and she admitted that she had sat in a resident's chair without the owner's permission (University Housing policy requires workers to use university-owned chairs while on breaks). Benoy was placed on paid administrative leave pending the results of the investigation.

Lefeber also met with Hernandez and Alvarez. Both admitted to taking the chairs.

On November 24, both Lefeber and Ignatoski met with Benoy. Benoy complained that she was being investigated because she is Latina. She said that she didn't know who took the chairs, that she did not know who put the chair in the apartment unit, and that she did not even see the chair when she was in the apartment unit. She acknowledged that she was work partners with Hernandez, and that Benoy and Hernandez shared a utility vehicle at work.

On January 6, Ignatoski and Lefeber met with Brenda Krueger, the director of human resources, and they decided to fire Benoy. It's undisputed that all three supervisors agreed on this decision, Dkt. 41, ¶ 73, but the parties dispute whether Ignatoski was the primary

4

decisionmaker. Dkt. 40, ¶ 32. The university says that all three came to the decision together. But Benoy contends that Ignatoski made the initial decision, and that Lefeber then agreed with it because Ignatoski was her boss. *See* Dkt. 29 (Lefeber Dep. 38:4–12). In either case, the parties agree that Ignatoski wrote a draft of Benoy's termination letter on January 6, and that Ignatoski and Krueger signed it.

On January 15, Benoy, Alvarez, and Hernandez met with Krueger to ask about the status of the investigation. At the meeting, Benoy complained about how Barcena had, in the past, made lewd remarks and given her inappropriate sexual looks.

On January 19, Lefeber and Ignatoski held a final meeting with Benoy and gave her a termination letter. The letter laid out the reasons for the termination:

- A stolen chair was found in an apartment unit where Benoy was assigned to work;

- It was "not reasonable to believe that [Benoy] would not see a patio chair in the apartment given that it was only 540 square feet";

- Hernandez, Benoy's work partner, admitted to taking the chair;

- Given that Hernandez and Benoy shared a work vehicle, and that Hernandez took the chair to an apartment where they both worked, it was not reasonable to believe that Benoy did not know how the chair arrived in the apartment unit; and

- Benoy was aware of the theft policy.

Dkt. 24-1, at 72–75. The letter concluded:

> After considering these points, and all of the information gathered, we believe you were involved with moving the chair from outside 806 into apartment 941 B. We believe it to be true that you were in possession, without permission, of resident property that did not belong to you, and that you understood this was against policy.

5

*Id.* at 74.

Hernandez and Alvarez were also fired for the theft of the chairs. No other custodians were accused of taking chairs or disciplined for it.

The court will discuss additional facts as they become relevant to the analysis.

ANALYSIS

A. **University motion for summary judgment**

Benoy says that she was fired because she told her supervisors about Barcena's sexual harassment, in violation of Title VII of the Civil Rights Act. "Title VII protects persons not just from certain forms of job discrimination, but from retaliation for complaining about the types of discrimination it prohibits." *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1007 (7th Cir. 2000); 42 U.S.C. § 2000e–3(a). To prevail on her retaliation claim, Benoy must prove that (1) she engaged in a statutorily protected activity; (2) the university took materially adverse action against her; and (3) there is a causal connection between the activity and the adverse action. *See Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017). The university does not dispute that Benoy engaged in protected activity or that she suffered a materially adverse action, but it contends that Benoy cannot prove a casual connection between the two.

To prove causation, Benoy must show that she would not have been fired had she not complained about Barcena. *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 501 (7th Cir. 2017). In the past, courts analyzed Title VII claims under the so-called "direct" and "indirect" methods, depending on the nature of the evidence presented. *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 763 (7th Cir. 2016). But the court of appeals has observed that these methods "complicated and sidetracked employment-discrimination litigation for many

years." *Id.* at 764. The better approach at summary judgment is to consider the evidence "as a whole," and focus on the core issue: whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's protected activity caused the discharge. *Lewis v. Wilkie*, 909 F.3d 858, 871 (7th Cir. 2018) (citing *Ortiz*, 834 F.3d at 765).

Benoy says that she can show causation through a combination of evidence of pretext and evidence that Barcena influenced the decision. The court addresses each category of evidence in turn.

1. **Evidence of pretext**

Benoy makes three arguments in support of her contention that the university's reasons for firing her were pretextual. None of them support her claim.

First, Benoy argues that Lefeber gave "shifting explanations" for Benoy's termination, because she testified at her deposition that Benoy was fired for lying about the chairs, Dkt. 40, ¶ 41 (citing Dkt. 29 (Lefeber Dep. 87:8–17)), but later said that Benoy was fired for taking the chairs, Dkt. 25, ¶ 6. Shifting explanations about an employer's reasons for firing an employee can support an inference of pretext in some situations, *e.g.*, *Hitchcock v. Angel Corps, Inc.*, 718 F.3d 733, 738 (7th Cir. 2013), but that is not what happened here. Lefeber did not, at any time, say that Benoy didn't steal the chair. Her deposition testimony clarified that Benoy's untruthfulness was one of the reasons *why* the university thought Benoy was involved in the chair theft. Dkt. 29 (Lefeber Dep. 88:15–89:6). This is consistent with Benoy's termination letter, which states that Benoy's statements were unbelievable, and that this was part of the reason that the university concluded that Benoy violated the theft policy. Dkt. 24-1, at 72–75. Small changes in wording, which are consistent with the rest of the record, are not evidence of pretext. *See Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 881 (7th Cir. 2016).

Second, Benoy says that a jury could infer pretext from the lack of evidence showing that she stole the chair. But Benoy simply ignores some of the evidence that implicates her.[3] It is undisputed that Benoy and Alvarez were seen in the chairs shortly before they went missing, and that one chair was found in Alvarez's vehicle while the other was found in Benoy's workspace. It is also undisputed that Benoy and Hernandez worked and traveled together in a single vehicle, and that Hernandez admitted to moving the chair. So it is implausible that Benoy was not present when the chair was moved. Finally, it is undisputed that the chair was kept in a small unfurnished apartment, making Benoy's claim that she did not see the chair implausible. No reasonable jury could infer pretext from these facts.

Third, Benoy says that Elida Senn also violated the anti-theft policy and was not fired.[4] But Senn was not caught stealing a resident's personal property; she was caught taking phonebooks that were left outside. Differential treatment of employees is evidence of retaliation only if the employees engaged in comparable conduct, *see Weber v. Universities Research Ass'n, Inc.*, 621 F.3d 589, 594 (7th Cir. 2010), and no reasonable jury could find that Benoy's and Senn's conduct was comparable. Benoy concedes that every employee who has been accused of stealing resident property, like her, has also been terminated. *See* Dkt. 41, ¶ 106.

---

[3] Benoy says that Ignatoski admitted that the only evidence against Benoy was her coworker relationship with Hernandez. Dkt. 40, ¶¶ 35–36. But Benoy takes Ignatoski's testimony out of context. The full deposition testimony shows that Ignatoski considered all of the evidence outlined in the termination letter. Dkt. 24-1, at 72–75 and Dkt. 31 (Ignatoski Dep. 100:24–101:18, 112:14–113:3, 126:17–24, 128:9–18).

[4] Senn was part of the group complaint against Barcena, but Benoy says that the Senn theft occurred before the group complaint.

## 2. Evidence that Barcena influenced the decision

Benoy contends that Barcena used Ignatoski as his "cat's paw" to retaliate against Benoy. The cat's paw theory is that an unbiased decisionmaker is influenced by someone who wishes to retaliate against the plaintiff for engaging in protected conduct. *See, e.g., Schandelmeier-Bartels v. Chicago Park Dist.*, 634 F.3d 372, 378–81 (7th Cir. 2011). To succeed under this theory, Benoy must show that the Barcena's actions were the proximate cause of her termination. *See Robinson v. Perales*, 894 F.3d 818, 832 (7th Cir. 2018) (citing *Johnson v. Koppers, Inc.*, 726 F.3d 910, 914 (7th Cir. 2013)), *reh'g denied* (July 24, 2018). The court assumes that that Barcena would have been motivated to retaliate against Benoy for her complaints about him, but Benoy has not adduced evidence that Barcena's comments about Benoy were the proximate cause of her termination.

It is undisputed that Barcena was not directly involved in the decision to fire Benoy. On the contrary, Ignatoski specifically excluded Barcena from the process because of the tensions between him and Benoy. But Benoy says that Barcena nonetheless influenced the investigation because he spent the previous year poisoning Ignatoski against her with a steady stream of negative performance reviews. Benoy argues that Barcena convinced Ignatoski that Benoy was a bad worker, and that this perception tipped the scales in favor of termination.

Benoy's theory is mere speculation. Under the department's strict anti-theft policy, even the best worker would have been fired for theft of a resident's property. Benoy admits that the university has consistently applied this policy against employees accused of stealing resident property. She cites no evidence that Barcena's comments about her played any part in the decision to terminate her.[5]

---

[5] In the context of her argument about the cat's paw theory, Benoy also says that Ignatoski was

### 3. Conclusion

Benoy has failed to adduce any evidence that her termination was caused by her protected activity, so the court will grant the university's motion for summary judgment.

### B. Motion to amend complaint

On the day that dispositive motions were due, Benoy filed a motion to amend her complaint to add an additional claim for retaliation for opposing race discrimination in violation of 42 U.S.C. § 1981. The timing of the motion alone is reason to deny it.[6] *See Bell v. Taylor*, 827 F.3d 699, 705 (7th Cir. 2016) (the court need not allow an amendment when there is undue delay or undue prejudice to the opposing party). But even if the motion were timely, the court would deny it because the new claim is futile. *See Sound of Music Co. v. Minnesota Min. & Mfg. Co.*, 477 F.3d 910, 923 (7th Cir. 2007) (amendment is futile if it would not survive summary judgment).

"The legal analysis for discrimination claims under Title VII and § 1981 is identical." *Ferrill*, 860 F.3d at 499 (quoting *Smith v. Chicago Transit Auth.*, 806 F.3d 900, 904 (7th Cir. 2015)). The court has already concluded that Benoy cannot establish a causal connection between her complaints about sex discrimination and her termination. She cites no other evidence supporting her proposed new claim. Regardless whether she opposed race

---

overwhelmed by the volume of Benoy's complaints and wanted to fire Benoy to end workplace strife. Dkt. 34, at 17–18. But Benoy does not develop this argument, explain how it relates to a cat's paw theory, or cite any evidence to support it.

[6] Benoy says that her race-based retaliation claim is based on recently discovered evidence, but that is simply not the case. She asserted a race-based retaliation claim before the Equal Employment Opportunity Commission in 2016. Dkt. 8-1. And when she filed her original complaint, she knew that she had reported Barcena for racial discrimination, as well as sex discrimination.

discrimination or sex discrimination, Benoy's retaliation claim fails because she has not adduced any evidence that the university's stated reason for firing her is a pretext for retaliation. Benoy's motion to amend will be denied.

ORDER

IT IS ORDERED that:

1. Plaintiff Martha Benoy's motion for leave to amend her complaint, Dkt. 16, is DENIED.

2. Defendant Board of Regents of the University of Wisconsin System's motion for summary judgment, Dkt. 21, is GRANTED.

3. The clerk of court is directed to enter judgment and close this case.

Entered February 13, 2019.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge